**Alicia R. PENA, Plaintiff,**

v.

**DOWNEY SAVINGS AND LOAN, ASSOCIATION, Chris Alvarez, Carmen Aguilar, and Does 1 through 100, inclusive, Defendants.**

No. CV 96–2051 WJR (AJWx).

United States District Court, C.D. California.

June 25, 1996.

Terry R. Menefee, Gillon Lepore Menefee & Baird, Lancaster, CA, for plaintiff Alicia R. Pena.

Anthony J. Oncidi, Mylene J. Brooks, Troop Meisinger Stueber & Pasich, L.L.P., Los Angeles, CA, for defendants Downey Savings and Loan Association, F.A. and Carmen Aguilar.

## MEMORANDUM AND ORDER

REA, District Judge.

### I.

### INTRODUCTION

Defendants have brought a motion to dismiss plaintiff's claims under Federal Rule of

Civil Procedure 12(b)(6). The matter came on regularly for a hearing before the Court on April 22, 1996. Having considered the motion, the papers filed in support thereof and in opposition thereto, the oral argument of counsel, and the file in the case, the Court now issues the following decision.

## II.

## BACKGROUND

Neither side has submitted a statement of facts in its brief, and the complaint is woefully short of many relevant details. As far as the Court can ascertain, the instant dispute arises out of the circumstances of plaintiff Alicia Pena's ("Pena") employment and termination at defendant Downey Savings and Loan Association's ("Downey") West Lancaster facility in Lancaster, California. Pena was hired by Downey as a customer service representative on May 20, 1993. After approximately two years of employment, Pena was terminated, purportedly for a violation of Downey's policies preventing employees from accepting personal loans from customers. Pena contends that, during discussions with her former branch manager, Chris Alvarez, she adequately refuted the allegations made against her but was fired nonetheless.

Pena claims that her employment relationship with Downey included an implied-in-fact contract to the effect that Pena could continue her employment indefinitely as long as she performed her duties competently, and that Downey would be required to follow certain pre-termination procedures in the event of problems with her job performance. Complaint, ¶ 9. Pena claims that this implied-in-fact contract was evidenced in oral representations, written documents, and performance reviews made by Downey's agents, directors, supervisors, and employees.

Pena asserts that the defendants failed to fulfill their responsibilities by: 1) denying Pena the opportunity to correct perceived deficiencies in her work performance; 2) subjecting Pena to arbitrary, unfair, and dishonest performance evaluations; 3) denying Pena a meaningful opportunity to respond to complaints about her job performance; 4) wrongfully disregarding Pena's concerns about possible discriminatory treatment; 5) failing to prevent the execution of a "pervasive program of harassment" and a hostile work environment meant to result in Pena's termination; 6) denying Pena equal opportunity for advancement and promotion; and 7) wrongfully terminating Pena on May 18, 1995, despite her satisfactory job performance. *Id.* ¶ 13. Pena, a Mexican-born immigrant to this country, also specifically alleges that certain individual defendants made demeaning references to her national origin, age, and accent, thereby exposing her to embarrassment and humiliation.

On January 18, 1996, Pena filed the instant action in state court. She brought claims for: 1) breach of implied employment contract; 2) age discrimination in violation of California Government Code § 12941, *et seq.*; 3) national origin discrimination in violation of California Government Code § 12940 *et seq.*; 4) wrongful termination in violation of public policy and California Government Code § 12940 *et seq.*; and 5) defamation. On March 22, 1996, Downey removed the action to federal court on federal question grounds, *i.e.*, that Pena's state claim for breach of implied contract is preempted by federal law. One week later, Downey filed the instant Rule 12(b)(6) motion to dismiss, which Pena has opposed.

## III.

## DISCUSSION

A. *Removal Jurisdiction*

■ As one ground for her opposition to the motion to dismiss, Pena argues that the Court lacks subject matter jurisdiction over this action and should therefore exercise its power to remand. Even if Pena had not raised the jurisdictional question, the Court would be required to examine it *sua sponte. FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 229, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990) (stating that "federal courts are under an obligation to examine their own jurisdiction"); *Washington Local Lodge No. 104 v. International Brotherhood of Boilermakers,* 621 F.2d 1032, 1033 (9th Cir.1980) (stating that "[w]hen jurisdiction may not exist ... the court must raise the issue even if the

parties are willing to stipulate to federal jurisdiction"); *see also Harris v. Provident Life and Accident Insurance Co.,* 26 F.3d 930, 933 (9th Cir.1994). If at any time prior to judgment it appears that the district court lacks subject matter jurisdiction, the case must be remanded. 28 U.S.C. § 1447(c).

■ Federal courts have original jurisdiction over all civil actions that involve "federal questions," *i.e.,* that "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Removal jurisdiction exists only if the suit could have originally been brought in federal court. 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). A district court must strictly construe the removal statute against removal jurisdiction, and reject federal jurisdiction if there is any doubt as to the right of removal in the first instance. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992).

### B. *"Well–Pleaded Complaint" Rule*

■ To determine whether an action "arises under" federal law, federal courts look to the complaint as originally filed. *Harris,* 26 F.3d at 932. The "well-pleaded complaint" rule dictates that "arising under" jurisdiction exists only where the federal question is apparent on the face of the well-pleaded complaint. *See Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Louisville & Nashville Railroad Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). A case may not be removed on the basis of a federal defense even if the defense is anticipated in the complaint and both parties concede that it is the only question at issue. *Caterpillar,* 482 U.S. at 392, 107 S.Ct. at 2429; *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Whitman v. Raley's Inc.,* 886 F.2d 1177, 1180 (9th Cir.1989). This is because federal defenses are generally not considered to exist on the face of the well-pleaded complaint and thus the case will not be deemed to "arise under" federal law. *See Metropolitan Life,* 481 U.S. at 63, 107 S.Ct. at 1546.

### 1. *Preemption Defenses*

■■ Preemption of state law by a federal statute or regulation ordinarily constitutes a defense to a state law claim. *See Fidelity Federal Savings & Loan Association v. de la Cuesta,* 458 U.S. 141, 153–54, 170, 102 S.Ct. 3014, 3022–23, 3031, 73 L.Ed.2d 664 (1982). Under a preemption theory, the defendant may contend, for example, that the preexisting state right of action is rendered nugatory by a conflicting federal statute or regulation, pursuant to the Constitution's Supremacy Clause. *See Hunter v. United Van Lines,* 746 F.2d 635, 639–40 (9th Cir.1984), *cert. denied,* 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 150 (1985); Wright, *Law of Federal Courts,* § 38, 230 (5th ed.1994). In such a case, the federal authority merely provides a defense to the state claim, and the well-pleaded complaint rule defeats removal. *Metropolitan Life,* 481 U.S. at 63, 107 S.Ct. at 1546; *Franchise Tax Board,* 463 U.S. at 13–14, 103 S.Ct. at 2848–49; *Felton v. Unisource Corp.,* 940 F.2d 503, 506–07 (9th Cir. 1991); *Westinghouse Electric Corporation v. Newman & Holtzinger, P.C.,* 992 F.2d 932, 934 (9th Cir.1993); *Ramirez v. Fox Television Station, Inc.,* 998 F.2d 743, 747 (9th Cir.1993); *Hunter,* 746 F.2d at 639. The action must then be remanded to state court for consideration of the federal preemption defense. *Williams v. Caterpillar Tractor Co.,* 786 F.2d 928, 932 (9th Cir.1986), *aff'd* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (citing *Franchise Tax Board,* 463 U.S. at 3–4, 12, 103 S.Ct. at 2843–44, 2847–48); *accord Michigan Savings & Loan League v. Francis,* 683 F.2d 957, 960–62 (6th Cir.1982); *Madsen v. Prudential Federal Savings and Loan Association,* 635 F.2d 797, 800–03 (10th Cir.1980), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981); *First National Bank of Aberdeen v. Aberdeen National Bank,* 627 F.2d 843, 849–53 (8th Cir. 1980).

### 2. *"Complete" Preemption*

■ A variant of the well-pleaded complaint rule, however, applies in certain limited circumstances. When Congress has preempted a particular area of law so thoroughly that any civil complaint raising a select group of claims within it is necessarily

federal in character, preemption is deemed perfect, or "complete." *Metropolitan Life,* 481 U.S. 58, 107 S.Ct. 1542; *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126, *reh'g denied,* 391 U.S. 929, 88 S.Ct. 1801, 20 L.Ed.2d 670 (1968); *Whitman,* 886 F.2d at 1180–81. In such cases, the plaintiff pleading such a state claim is understood to be stating a federal claim, even if involuntarily; the putative state law claim is therefore treated as "arising under" federal law from its inception. *Ramirez,* 998 F.2d at 747; *see Avco Corp.,* 390 U.S. at 560–62, 88 S.Ct. at 1237–38 (finding federal jurisdiction under § 301 of the Labor Management Relations Act (LMRA) over state court action premised upon violation of a collective bargaining agreement); *Metropolitan Life,* 481 U.S. at 66–67, 107 S.Ct. at 1547–48 (finding extraordinary preemption in pension law area so that § 502(a)(1)(B) of Employee Retirement Income Security Act (ERISA) confers federal jurisdiction over claims seeking recovery of benefits under covered plans). Where preemption is "complete," congressional intent to make the cause(s) of action removable is "clearly manifested." *Metropolitan Life,* 481 U.S. at 66–67, 107 S.Ct. at 1547–48; *Whitman,* 886 F.2d at 1180.

■■■■ A preemption defense, therefore, confers removal jurisdiction on the district court only when federal law overrides the state-law claim *and* replaces it with a federal cause of action. *Hunter,* 746 F.2d at 642–43; *Olguin v. Inspiration Consolidated Copper Co.,* 740 F.2d 1468, 1476 (9th Cir.1984). As the Ninth Circuit has explained, a distinction must be drawn in cases where federal preemption is alleged

> between preemption as a defense, allegedly precluding the plaintiff's state law cause of action, as opposed to "complete preemption" which means that the plaintiff's cause of action is necessarily a federal one. Where there is "complete preemption," the court determines that Congress' intent was to preempt an entire field of law and provide a uniform federal law cause of action. The necessary jurisdictional consequence is that the cause of action is made federal, permitting removal.

*Williams,* 786 F.2d at 932 (internal citations omitted) (internal quotation omitted). Thus, where a preemption argument relies on the proposition that state law cannot regulate the relevant field but does not propose that the complaint actually states a federal cause of action, removal jurisdiction does not exist. *See Hunter,* 746 F.2d at 642 (quoting *Garibaldi v. Lucky Food Stores, Inc.,* 726 F.2d 1367, 1371 n. 5 (9th Cir.1984), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985)).

■■■■ The burden of establishing federal jurisdiction falls on the party invoking the removal statute. *Williams,* 786 F.2d at 930; *Hunter,* 746 F.2d at 639. A defendant "cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Caterpillar,* 482 U.S. at 399, 107 S.Ct. at 2433.

### C. *Preemption Under 12 C.F.R. § 563.39(a)*

In this case, Downey has invoked a defense of federal preemption based on 12 C.F.R. § 563.39(a), which requires that all employment contracts between a "savings association" and its employees be in writing and specifically approved by the association's board of directors. Downey contends that this provision preempts Pena's state-law claim for breach of an implied employment contract citing, *inter alia, Bianco v. H.F. Ahmanson & Co.,* 897 F.Supp. 433 (C.D.Cal. 1995) (holding that § 563.39(a) preempts California common law allowing for the creation of an implied-in-fact employment contract through conduct of the parties).

■■■■ While this contention may well have merit, the Court is not empowered to consider it *a priori.* Whether the district court has subject matter jurisdiction over an action in which a preemption defense is asserted must be affirmatively resolved before the merits of the preemption issue can be reached, and the two questions are analytically distinct. *Whitman,* 886 F.2d at 1181 (noting that only a court possessing jurisdiction may rule on the application of a preemp-

tion defense). As the Supreme Court has made clear, the merit of a preemption defense does not influence the question of whether "arising under" jurisdiction exists:

the touchstone of the federal district court's removal jurisdiction is not the "obviousness" of the pre-emption defense but the intent of Congress. Indeed, as we have noted, even an "obvious" pre-emption defense does not, in most cases, create removal jurisdiction.

*Metropolitan Life,* 481 U.S. at 66, 107 S.Ct. at 1548; *Whitman,* 886 F.2d at 1181; *see also First Federal Savings & Loan Association of Detroit v. Detroit Bond & Mortgage Investment Co.,* 687 F.2d 143, 145 (6th Cir. 1982), *reh'g denied sub nom. First Federal Savings & Loan Association of Detroit v. Lustig,* 702 F.2d 92 (1983).

In order to determine whether preemption here is "complete," thus creating removal jurisdiction, the Court must examine the contours of the federal authority in question. 12 C.F.R. § 563.39(a), promulgated by the Office of Thrift Supervision of the Department of the Treasury ("OTS"), expressly governs employment contracts between federally chartered financial institutions and their employees. The section states, in pertinent part, that

(a) *General.* A savings association may enter into an employment contract with its officers and other employees only in accordance with the requirements of this section. All employment contracts shall be in writing and shall be approved specifically by an association's board of directors. An association shall not enter into an employment contract with any of its officers or other employees if such contract would constitute an unsafe or unsound practice....

12 C.F.R. § 563.39(a).

■ As to the first requirement of "complete" preemption, that federal law supersede state law, there appears to be little dispute. Federal regulations may preempt state law just as fully as federal statutes. *Fidelity Federal,* 458 U.S. at 153, 102 S.Ct. at 3022. Section 563.39(a) is promulgated under the OTS's authority pursuant to the Home Owners' Loan Act of 1933 ("HOLA"),

12 U.S.C. § 1461 *et seq.* 12 U.S.C. § 1463, 1464(a). OTS regulations specifically state that they are "preemptive of any state law purporting to address the subject of the operations of a Federal savings association." 12 C.F.R. § 545.2; *see also* 12 C.F.R. § 545.122. Courts in this circuit have confirmed Congress's intent that the OTS be permitted to regulate federal savings associations without state legislative or regulatory interference. *E.g., Conference of Federal Savings and Loan Associations v. Stein,* 604 F.2d 1256, 1257–58 (9th Cir.1979), *aff'd,* 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980); *Glendale Federal Savings & Loan Association v. Fox,* 459 F.Supp. 903, 904 (C.D.Cal.1978). The preemptive effect of HOLA and its accompanying regulations has been upheld in the employment context as well. *E.g. Aronson v. Resolution Trust Corp.,* 38 F.3d 1110, 1112–13 (9th Cir.1994) (holding that 12 C.F.R. § 563.39(a) rendered plaintiff's oral employment agreement unenforceable).

The second requirement of "complete" preemption, that the federal law or regulation provide a substitute cause of action, is a different matter, however. Downey offers no argument or authority for the proposition that 12 C.F.R. § 563.39(a) creates a private right of action, and the Court notes that this question has already been answered in the negative in a well-reasoned opinion by Judge Lynch of the Northern District of California in *Fikru v. Home Savings of America,* 1993 WL 204314 (N.D.Cal.1993).

■ As Judge Lynch correctly noted in *Fikru,* 12 C.F.R. § 563.39 does not expressly authorize a private right of action. *Fikru,* 1993 WL 204314, at 3. The regulation also does not appear to contain an implied cause of action. The presence or absence of implicit authorization may be demonstrated by application of a four-factor test laid out by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). According to the *Cort* test, the plaintiff seeking to sue under a statute or regulation must show: 1) that plaintiff is part of the class for whose "especial benefit" the statute or regulation was enacted; 2) that Congress intended, ei-

ther explicitly or implicitly, to create or deny the specific remedy sought; 3) that consistency with the underlying legislative and regulatory scheme will be maintained; and 4) that the cause of action is not one that is traditionally relegated to state law, such that inferring a federal cause of action would be inappropriate. *Cort,* 422 U.S. at 78, 95 S.Ct. at 2087–88. Of these four factors, the issue of congressional intent is paramount and a negative finding is dispositive. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *LeVick v. Skaggs Companies, Inc.,* 701 F.2d 777 (9th Cir.1983).

■■■■ Nothing in HOLA or its subsequent amendments indicates that Congress intended to create a private right of action for a violation of § 563.39. *Fikru,* 1993 WL 204314, at 3–4. First, the responsibility for enforcement of HOLA and regulations promulgated thereunder rests almost entirely with the OTS. *See* 12 U.S.C. § 1464(d); *Eureka Federal Savings and Loan Association v. Kidwell,* 672 F.Supp. 436, 438 (N.D.Cal.1987). Second, especially telling is the fact that Congress did expressly create two private rights of action that are not related to § 563.39.[1] Given the presumption that "Congress provided precisely the remedies it considered appropriate," *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 15, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981), the absence of any clear legislative indication that § 563.39 also contains a private civil enforcement provision would appear to resolve the issue of congressional intent.[2] *Cf. Eureka,* 672 F.Supp. 436 (holding that HOLA does not contain a private right of action for savings association to sue former officers,

directors and employees for statutory and regulatory violations); *First Hawaiian Bank v. Alexander,* 558 F.Supp. 1128 (D.Haw.1983) (holding that HOLA and accompanying federal regulations do not contain an implied private cause of action).

■■■■ Nothing in the language or structure of the regulatory provision itself changes the Court's position in this respect. First, where a statute creates neither an express nor an implied private right of action, as is the case here, a court should be reluctant to infer congressional intent from its accompanying regulations. *See G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service, Inc.,* 958 F.2d 896, 902 (9th Cir. 1992), *cert. denied,* 508 U.S. 959, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993) (declining to find an implied right of action in federal aviation regulations where Federal Aviation Act itself contained no private right of action). Second, the language of a related provision, § 563.39(b)(1), indicates that every employment contract must protect a savings association's power to "terminate the employee's employment at any time." 12 C.F.R. § 563.39(b)(1). Implying a private cause of action for wrongful termination in the face of this plain language would appear to undermine § 563.39's purpose. Third, regulatory comments suggest that the policy behind § 563.39 is to protect savings associations from entering into "unsafe and unsound" employment contracts that could interfere with the discretion of directors to terminate employees. 47 Fed.Reg. 17471 (1982). The stated policy behind the regulation, therefore, would also conflict with a construction of § 563.39 as expanding employee rights. On balance, therefore, the Court must con-

---

1. Under HOLA, any federal savings and loan association or director or officer thereof may bring an action against the Director of the OTS with respect to a matter arising under 12 U.S.C. § 1464. 12 U.S.C. § 1464(d)(1). In addition, Congress amended HOLA in 1982 to expressly provide for a civil remedy to obtain redress for certain unfair credit practices. 12 U.S.C. § 1464(q).

2. In *Fikru,* Judge Lynch also noted that the other three *Cort* factors also did not support the implication of a private cause of action under 12 C.F.R. § 563.39. The court found that § 563.39

was promulgated to protect savings associations from employment contracts that might place them at risk, rather than to protect employees. *Fikru,* 1993 WL 204314, at 4. In addition, the regulatory scheme's purpose of giving savings institutions "greater flexibility to terminate employment contracts" is inconsistent with implication of a private right of action by a terminated employee. *Fikru,* 1993 WL 204314, at 4 (quoting 47 Fed.Reg. at 17471 (1982)). Finally, the court noted that breach of contract is a cause of action traditionally brought under state law. *Fikru,* 1993 WL 204314, at 4.

clude that § 563.39(a) contains neither an express nor an implied private civil remedy.

Because neither HOLA nor the regulation at issue here appears to have created a federal private right of action that could substitute for a state-law breach of contract claim, preemption cannot be deemed "complete." Instead, it appears that the regulation in question merely provides a federal defense to enforcement of employment agreements, including implied-in-fact contracts, where a written contract and approval by a board of directors are lacking. The cases cited by Downey support this limited conclusion, that 12 C.F.R. § 563.39(a) constitutes a preemption defense rather than a "complete" preemption of the state law field. *See Bianco,* 897 F.Supp. at 438–39 (holding that application of 12 C.F.R. § 563.39(a) rendered plaintiff's alleged employment contract unenforceable and thus disposed of, *inter alia,* plaintiff's breach of implied-in-fact contract claim); *Aronson,* 38 F.3d at 1112–13 (holding that 12 C.F.R. § 563.39(a) rendered plaintiff's oral agreement unenforceable). The Eighth Circuit appears to have taken a similar approach. *E.g. Piekarski v. Home Owners Savings Bank, F.S.B.,* 956 F.2d 1484, 1489 (8th Cir.), *cert. denied,* 506 U.S. 872, 113 S.Ct. 206, 121 L.Ed.2d 147 (1992) (holding that preemption under 12 C.F.R. § 563.39(a) of a state employment contract claim constitutes an affirmative defense and does not involve a choice-of-forum question). At least one federal court from another jurisdiction has specifically held that invocation of a preemption defense based on 12 C.F.R. § 563.39(a) to a breach of contract claim does not confer federal removal jurisdiction. *Matlock v. First Federal Savings & Loan Association of Pottstown,* 1990 WL 82102

(E.D.Pa.1990). Downey's specific reliance on the Central District of California decision in *Bianco v. H.F. Ahmanson & Co.,* 897 F.Supp. 433 (C.D.Cal.1995), to support its jurisdictional argument is misplaced.[3]

The Supreme Court has made clear that the broad preemptive power of a federal statute or regulation to convert an ordinary state common law complaint into one stating a federal claim for the purposes of the well-pleaded complaint rule is "extraordinary," and will not be lightly inferred.[4] *Metropolitan Life,* 481 U.S. at 65, 107 S.Ct. at 1547; *see also Whitman,* 886 F.2d at 1181 (noting that a determination that Congress intended preemptive power to be strong enough to trigger federal jurisdiction is reserved for "exceptional circumstances"); *see also Matlock,* 1990 WL 82102, at 2 (noting that removal jurisdiction requires a finding of "extraordinary preemptive power" and clearly manifested congressional intent). In light of this admonition and the discussion above, it is clear that a conflict between 12 C.F.R. § 563.39(a) and California's common-law cause of action for breach of implied contract does not rise to the exceptional level of "complete" preemption. Neither HOLA nor OTS regulations creates a federal cause of action with respect to employment contracts that would replace applicable state causes of action. Accordingly, it is the Court's conclusion that preemption is not "complete" and removal jurisdiction is not available. The proper course is therefore to remand the action, whereupon Downey's substantive defense of preemption will be a matter for the state court to determine as part of its trial proceedings. *See Whitman,* 886 F.2d at 1181.

---

**3.** Downey argues that the *Bianco* court's adjudication of the defendant's § 563.39 preemption defense constituted an implied holding that invocation of the defense conferred removal jurisdiction, since the opinion does not make reference to any other basis for federal subject matter jurisdiction. This contention is incorrect. The *Bianco* court found its jurisdiction over the matter in a question of possible ERISA preemption of one of Bianco's claims. *Bianco v. H.F. Ahmanson,* CV 95–1353 ABC (RNBx) (C.D.Cal. April 26, 1995) (order denying motion to remand).

**4.** The Supreme Court has heretofore reserved the doctrine of "complete preemption" primarily for the fields of: labor law, under LMRA § 301 and the Railway Labor Act, 45 U.S.C. § 151a; employee pensions, under ERISA § 502; and actions for possession of tribal lands. *See Caterpillar,* 482 U.S. at 393 n. 8, 107 S.Ct. at 2430 n. 8; *Metropolitan Life,* 481 U.S. at 64–67, 107 S.Ct. at 1546–48; *Westinghouse,* 992 F.2d at 935; *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, ––––  n. 9, 114 S.Ct. 2239, 2249 n. 9, 129 L.Ed.2d 203 (1994).

The Court is inclined to note at this point that application of the well-pleaded complaint rule in the manner laid out herein has not escaped criticism. The presumption of parity between state and federal courts dictates that state courts are just as competent as federal courts to hear federal preemption defenses. *E.g., Sullivan v. First Affiliated Securities, Inc.,* 813 F.2d 1368, 1372 n. 5 (9th Cir.), *cert. denied,* 484 U.S. 850, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987). Some commentators have suggested, however, that there are potential problems for sensitive federal legislative and regulatory interests inherent in entrusting the adjudication of federal preemption defenses to state courts. *See Hunter,* 746 F.2d at 639 (citing American Law Institute, *Study of the Division of Jurisdiction Between State and Federal Courts,* § 1312 (1969)); *see also* Twitchell, *Characterizing Federal Claims: Preemption, Removal, and the Arising–Under Jurisdiction of the Federal Courts,* 54 Geo.Wash.L.Rev. 812, 814 & n. 8 (1986) (suggesting that state court adjudication of federal preemption carries the risk of distortion of federal policy); Segreti, *Vesting the Whole "Arising Under" Power of the District Courts in Federal Preemption Cases,* 37 Okla.L.Rev. 539, 557–58 (1984) (noting that federal courts are more likely than state courts to find federal preemption). The Ninth Circuit has explicitly recognized a defendant's substantial interest in having its federal preemption argument decided by a federal court, and has questioned the wisdom of the well-pleaded complaint rule as it is currently applied. *Hunter,* 746 F.2d at 639–40. A cursory review of California state court decisions, for example, reveals a more-than-occasional reluctance to find preemption of state law claims for wrongful termination under 12 C.F.R. § 563.39(a).[5]

Ultimately, however, whether such concerns are well-founded or not is a question properly relegated to the province of academia, or to the Supreme Court in its capacity to review state court decisions, and is not a matter properly before this Court. *See Zemp v. Boeing Vertol Co.,* 1987 WL 14851, at 5 (E.D.Pa.1987) (noting that state court decisions on preemption may ultimately be subject to Supreme Court review). Unless and until Congress acts to make removal jurisdiction available in cases where the federal question appears only as a defense, defendants in Downey's position will remain unentitled to a federal forum at this initial stage. *See Hunter,* 746 F.2d at 639; *see also* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure,* § 3722, at 283–84 (2d ed. 1985).

## IV.

## CONCLUSION

For the foregoing reasons, it is the Court's decision that the case be remanded to state court. The parties shall bear their own costs and attorneys' fees.

IT IS SO ORDERED.

(holding state claim for wrongful discharge premised on implied-in-fact contract not preempted); *Hall v. Great Western Bank,* 231 Cal.App.3d 713, 282 Cal.Rptr. 640 (1991) (holding state claim for wrongful discharge in violation of public policy not preempted); *Honig v. Financial Corporation of America,* 6 Cal.App.4th 960, 7 Cal.Rptr.2d 922 (1992) (holding state claims for wrongful discharge not preempted).

---

5. The possibility of state court hostility to a defense of preemption based on 12 C.F.R. § 563.39(a) appears to be more than conjectural. California courts have in the past refused to allow such a defense to defeat claims of wrongful termination based on breach of an implied-in-fact contract or on violation of public policy. *See Thomka v. Financial Corporation of America,* 15 Cal.App.4th 877, 19 Cal.Rptr.2d 382 (1993)