224 N.J. Super. 446 (1988)
540 A.2d 923
ROBERT COLE AND MARIE COLE, PLAINTIFFS,
v.
CARTERET SAVINGS BANK, P.A. AND FRANK WILLIS, DEFENDANTS.
Superior Court of New Jersey, Law Division Passaic County.
Decided February 26, 1988.
*447 W. Thomas Mc Donough, Jr. for plaintiffs.
Carl H. Rifino for defendants (Carella, Byrne, Bain & Gilfillan, attorneys).
CONN, J.S.C.
In this wrongful job termination suit, bifurcated first as to liability, the core of the claim is that defendant, a large savings institution with over 800 employees, is liable to plaintiff under an implied contract doctrine based on an employee manual, all as enunciated in Woolley v. Hoffmann-La Roche, 99 N.J. 284 mod. 101 N.J. 10 (1985).
A prior oral ruling in this nonjury trial disposed of the various factual issues; the court having concluded that plaintiff had contract rights under defendant's manual as per Woolley, *448 supra; that defendant failed to follow the required procedures and further, it found that defendant had terminated plaintiff's job without good cause. An additional claim by plaintiff that the supervisory officer involved had tortiously interfered with his employment rights, thus giving rise to a claim of punitive damages, was rejected by the court.
This opinion addresses the defense by Carteret that notwithstanding all of the findings above, the Woolley v. La Roche contract doctrine is inapplicable here, because it is preempted by federal law and the regulations that control defendant as a federal savings and loan institution. The claim is that the Home Owner's Loan Act, 12 U.S.C.A. §§ 1461 et seq. (HOLA) and the Federal Home Loan Bank Board (board), the regulatory agency thereunder, oversee member institutions such as defendant and that the act (HOLA) and the board's regulations have completely preempted all phases of federal savings and loan activity. While case law elsewhere and in the federal system have addressed the issue, the point is a novel one here in New Jersey.
A brief history reveals that plaintiff was hired by defendant in March 1984 and that he received, as all defendant's employees did, a company employee manual. He was a middle-level manager and received a $33,000 per annum salary. His job was terminated in September 1984 and as indicated, the firing was without good cause and without any semblance of compliance by Carteret with the manual's performance and termination procedures, etc.
Defendant has been a federal savings and loan association operating under the aegis of the HOLA for many years. In September 1983 it became "re-chartered" which in essence, made it into a public company. It changed its name from savings and loan association to savings bank in January 1986. The HOLA which became law in 1933 authorizes the board to regulate member savings and loans such as defendant and to issue regulations thereunder. That board not only regulates *449 institutions such as defendant, but also institutions under the Home Loan Bank Act, 12 U.S.C.A. §§ 1421 et seq., as well as being the regulatory agency for several other federal banking and financing statutes.
The thrust of Carteret's claim is that by reason of a certain regulation, 12 C.F.R. § 563.39 "employment contracts," the board has preempted the whole area of employee rights as to member institutions and thus the implied contract right established in Woolley, supra, is barred as well. It relies generally on the broad preemption principles outlined by the United States Supreme Court in Fidelity Federal S & L Assn. v. de la Cuesta, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) and specifically on Berry v. American Federal Savings, 730 P.2d 905 (Colo. App. 1986), which case defendant contends is a direct on point precedent to the case at bar. The issue is classic federal versus state preemption and therefore the court's function is to examine the federal statute and regulations in order to determine the congressional and regulatory agency intent as to this area of federal savings and loan employee rights.
Fidelity Federal, supra, teaches us that the HOLA and its regulations will preempt and nullify any conflicting state law. A conflict will arise, for example, when compliance with both federal and state regulations is a physical impossibility. See Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). Also, a conflict arises when the state law stands as an obstacle to the accomplishment and execution of the purposes of Congress. See Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941). In Fidelity Federal, supra, the issue was a concise and narrow one  whether the board's regulation empowering members to include due-on-sale clauses in their loan instruments preempted local law which limited the enforcement of such clauses only when the institution demonstrated that a transfer of the property impaired its security. The Court concluded the board regulation did preempt and construed the California statute in question to be in conflict with the board's regulations. The Court, *450 however, also recognized that HOLA and its board's regulations did not have unlimited preemptive power over state law:
Although the Board's power to promulgate regulations exempting federal savings and loans from the requirement of state law may not be boundless, in this case we need not explore the outer limits of the Board's discretion. [458 U.S. at 167, 102 S.Ct. at 3030]
12 C.F.R. § 563.39 states in part:
§ 563.39. Employment contracts.
(a) General. An insured institution may enter into an employment contract with its officers and other employees only in accordance with the requirements of this section. All employment contracts shall be in writing and shall be approved specifically by an institution's board of directors. An institution shall not enter into an employment contract with any of its officers or other employees if such contract would constitute an unsafe or unsound practice. The making of such an employment contract would be an unsafe or unsound practice if such contract could lead to material financial loss or damage to the institution or could interfere materially with the exercise by the members of its board of directors of their duty or discretion provided by law, charter, bylaw or regulation as to the employment of an officer or employee of the institution. This may occur, depending upon the circumstances of the case, where an employment contract provides for an excessive term.
(b) Required provisions. Each employment contract shall provide that:
(1) The institution's board of directors may terminate the officer or employee's employment at any time, but any termination by the institution's board of directors other than termination for cause, shall not prejudice the officer or employee's right to compensation or other benefits under the contract. The officer or employee shall have no right to receive compensation or other benefits for any period after termination for cause. Termination for cause shall include termination because of the officer or employee's personal dishonesty, incompetence, willful misconduct, breach of fiduciary duty involving personal profit, intentional failure to perform stated duties, willful violation of any law, rule, or regulation (other than traffic violations or similar offenses) or final cease-and-desist order, or material breach of any provision of the contract....
Thus, a savings and loan may have employment contracts and if so they shall be in writing, specifically approved by a member's board of directors and include the language of 12 C.F.R. § 563.39(b)(1), which language is clearly protective of employees who are fired without cause.
Carteret says the manual, while in writing, is not that which is contemplated by 12 C.F.R. § 563.39, that it was never specifically *451 approved by its directors and further that it does not contain the aforesaid language. Therefore, since the very promulgation of 12 C.F.R. § 563.39 bespeaks a concern about employees and their contractual arrangements with the institution, defendant claims the regulation totally preempts any local efforts in this area of employee contracts. (Carteret's position with the manual is somewhat anomalous, for while the evidence indicates its board of directors never formally authorized the issuance of the manual, Carteret conceded that it was uniformly distributed to all employees.) In any event, the evidence shows that only ten top level management officers of defendant had employment contracts and all of them contained the required language of 12 C.F.R. § 563.39(b)(1) and all with specific time periods.
Thus the question, does the presence of § 563.39 indicate intent by the federal board to preempt state law that affords additional protection to employees? Berry, supra, a Colorado Appeals Court ruling, seems to say so and the decision would be significant inasmuch as Colorado is one of the states, like New Jersey, that has established a contract right for employees based on a company's manual. See Salimi v. Farmers Insurance Group, 684 P.2d 264 (Colo. App. 1984). Indeed, Berry based his claim on such an employee manual. The court held that regulation 563.39 did preempt the application of the state case law and dismissed the suit. The authority relied on by the Berry Court was a Ninth Circuit decision, Inglis v. Feinerman, 701 F.2d 97 (9 Cir.1983). However, a reading of Inglis shows that the institution there was a home loan bank subject to the Home Loan Bank Act, 12 U.S.C.A. §§ 1421, et seq., not the HOLA under which defendant operates. The Home Loan Bank Act, unlike HOLA, and the regulation herein, has a section that specifically permits home loan banks to terminate employees at will. See § 1432(a). Clearly in that context a conflict exists between Congress's authorization in the act and *452 the state law relied upon by the claimant. Thus, applying principles as set forth in Fidelity Federal, supra, where such a conflict exists, the federal law preempts. However, HOLA not only is devoid of any authorization to fire at will, but the very regulation in question, 12 C.F.R. § 563.39, indicates a clear concern for employee rights. Thus one can see an expression of policy by Congress with regard to home loan banks of affording no protection to employees, while the bank board by regulation apparently determined to afford protection to employees of federal savings and loans fired without cause. The court therefore respectfully declines to follow the holding in Berry, supra.
It seems unlikely that the presence of said regulation amounts to an intent by the board to preempt federal savings and loans from the thrust of state law that affords protection to the employees of such institutions. An analysis of HOLA and the board's regulations implementing it fails to reveal any intent to bar state established protection for such employees.
It is interesting to note that another regulation of the board, 12 C.F.R. § 563.36, specifically includes a mandate that member institutions take affirmative action to insure that employees are treated without regard to race, color, religion, etc. Additionally, 12 C.F.R. § 563.39(a) shows an expressed concern that member institutions not make employment contracts with any officers or other employees that would constitute an unsafe and unsound practice. An example suggested in the regulation is an employment contract that provides for an excessive term! It is hardly likely that the board was concerned that middle management or lower level employees could jeopardize the management of a member institution due to long term contracts. Indeed, as shown, the only contracts Carteret has are all with senior executives; added support for a conclusion that the obvious concern of 563.39 is the type of formal contracts for top management positions.
*453 The court is satisfied and concludes that regulation § 563.39 is simply an expression of policy instructing member institutions that if they do contract formally with certain employees, that it must be in writing, authorized by its Board, etc., etc. There is nothing to even suggest that the board intended that the vast number of employees who have no formal contracts with such institutions be precluded from claiming reliance on a work manual which outlines specific steps for performance related terminations. Therefore, applying established principles of Fidelity Federal, supra, the court is satisfied that the Woolley doctrine does not conflict with 12 C.F.R. § 563.39 and is not preempted. Applying Woolley principles will not make compliance with the federal regulation a physical impossibility as per Florida Lime, supra. Furthermore, the applicability of the Woolley doctrine is not an obstacle to the accomplishment and execution of the purposes of the HOLA and the bank board as per Hines v. Davidowitz, supra.
To the extent that the language in 12 C.F.R. § 563.39(b)(1) barring any rights to employees terminated for cause, conflicts with the holding by the Supreme Court in Woolley, supra, which provides a basis for a claim even for good cause terminations where the manual procedures are ignored, it is enough to point out that here plaintiff was fired without good cause as well.
There is further argument by plaintiff that the Carteret preemption defense should be barred by its failure to specifically plead it as an affirmative defense pursuant to R. 4:5-4. Defendant contends that it is sufficiently pleaded and is within the affirmative defense, a failure to state a claim upon which relief can be granted under R. 4:6-2(e). The rule would seem to indicate that a more specific pleading of the preemption defense is required and a failure to do so could be fatal to the raising of said defense. Nevertheless, in view of the importance of the preemption claim, the court has addressed it.
*454 Finally, it is Carteret's contention that, in any event, Woolley, supra, is only to be applied prospectively. Since the Supreme Court's ruling is dated May 1985, defendant claims its actions involving plaintiff, being in 1984, predate the rationale established there. For support, defendant cites Bimbo v. Burdette Tomlin Memorial Hospital, 644 F. Supp. 1033 (D.N.J. 1986), in which the United States District Court, New Jersey, specifically holds that Woolley, supra, is to receive such prospective application. This court respectfully disagrees with that holding and concludes that the Supreme Court in Woolley intended to include all claimants, this plaintiff as well. While the court did not specifically address the issue of retroactive versus prospective application, they seemed to make it clear, when they rejected Hoffman-La Roche's fear of potential disgruntled employees, that such claims are cognizable. The court also covered the right of employers to correct any manual language or attach clear warnings to such manuals and thus the court addressed both the past and the future. Indeed, only one month before the Woolley decision, the court in Rutherford Education Assn. v. Board of Ed., 99 N.J. 8 (1985) went into a thorough analysis of retroactive-prospective application of its decisions. Not only is it made clear that retroactive application is presumed, but a review of the various factors the court listed to apply in such a test, makes it abundantly clear that a breach of an implied contract would be the type of justifiable claim that would be considered retroactively.
In this regard, see also Ware v. Prudential, 220 N.J. Super. 135 (App.Div. 1987), where the Appellate Division addressed the Woolley doctrine in a fact setting that predated it. While the court ruled that Woolley was distinguishable, it pointedly did not reject its applicability based on a prospective application theory. This court believes that refusal by the Appellate Division is binding on it as well.
This matter shall therefore proceed to trial on the issue of damages.