[No. B045945. Second Dist., Div. Four. June 25, 1991.]

GENEVIEVE HALL, Plaintiff and Appellant, v.
GREAT WESTERN BANK, Defendant and Respondent.

COUNSEL

Paul Morantz for Plaintiff and Appellant.

Jeffrey J. Hultman and Irene S. George for Defendant and Respondent.

OPINION

**WOODS (A. M.), P. J.**—Appellant Genevieve Hall sued respondent Great Western Bank for wrongful termination of her employment. Her complaint alleged that she was fired because she refused to comply with respondent's instruction to withdraw her application for partial unemployment benefits which she had filed with the Employment Development Department. She alleged that this was the sole reason for her termination, and that the termination violated "public policy, i.e., the rights to lawfully apply for unemployment insurance benefits . . . ." This appeal is taken from an order of the trial court sustaining, without leave to amend, respondent's demurrer to the complaint.[1]

Respondent, a federal savings association[2] chartered under section 5 of the Home Owners' Loan Act (HOLA or the Act)[3] and subject to regulations

---

[1]The record as originally designated and filed contained no indication that a judgment of dismissal had been entered in this matter. We have, at the request of respondent Great Western Bank, taken judicial notice of an order dismissing the action filed on September 7, 1989.

[2]Respondent requested judicial notice of this fact in the trial court. The record before us does not specifically reveal whether this request was granted. Since we indulge all presumptions in support of the judgment (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193]), we presume the request was granted.

[3]Section 5 of the Act is found at 12 United States Code section 1464, which provides in relevant part: "(a) *In General.* In order to provide thrift institutions for the deposit of funds and for the extension of credit for homes and other goods and services, the Director is authorized, under such regulations as the Director may prescribe—(1) to provide for the . . .

promulgated by the Office of Thrift Supervision (OTS or Office)[4] based its demurrer, in part, on the assertion that appellant's action for wrongful termination is preempted by one such regulation, 12 Code of Federal Regulations section 563.39. That section provides in relevant part: "(a) *General.* A savings association may enter into an employment contract with its officers and other employees only in accordance with the requirements of this section. . . . [¶] (b) *Required Provisions.* Each employment contract shall provide that: [¶] (1) The association's board of directors may terminate the officer or employee's employment at any time, but any termination by the association's board of directors other than termination for cause, shall not prejudice the officer or employee's right to compensation or other benefits under the contract. The officer or employee shall have no right to receive compensation or other benefits for any period after termination for cause. Termination for cause shall include termination because of the officer or employee's personal dishonesty, incompetence, willful misconduct, breach of fiduciary duty involving personal profit, intentional failure to perform stated duties, willful violation of any law, rule or regulation . . . or final cease-and-desist order, or material breach of any provision of the contract." (Italics deleted.)

The trial court apparently sustained respondent's demurrer on the ground that this regulation preempted appellant's action. We use the term "apparently" because we have not been provided with a reporter's transcript, and the clerk's transcript reveals only that the demurrer was sustained without leave to amend. The minute order reflecting this ruling does not specify the ground upon which it was based.[5] It appears, however, that it was based on the ground of preemption since that is the only ground upon which respondent based its argument that the demurrer should be sustained without leave to amend.

Appellant contends in this appeal that the trial court erred in reaching this conclusion because Congress did not intend to preempt actions arising from a violation of public policy. Respondent counters that the regulations "*expressly* preempt any state law purporting to address any aspect of the operations of a federal association." (Original italics.)

operation . . . of associations to be known as Federal savings associations (including Federal savings banks) . . . ."

[4]The OTS was formerly the Federal Home Loan Bank Board (FHLBB). The FHLBB was replaced by the OTS pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989, effective August 9, 1989 (12 U.S.C.S. § 1462(a)).

[5]Respondent asserted in the trial court that appellant's complaint was subject to demurrer on the additional grounds that it alleged a void and unenforceable oral contract, that it sought punitive damages, that it was "preempted" by the Workers' Compensation Act and that it was uncertain.

In support of this contention respondent cites a regulation found at 12 Code of Federal Regulations section 545.2 which provides: "The regulations in this Part 545 are promulgated pursuant to the plenary and exclusive authority of the Office to regulate all aspects of the operations of Federal savings associations, as set forth in section 5(a) of the Act. This exercise of the Office's authority is preemptive of any state law purporting to address the subject of the operations of a Federal savings association."

Although 12 Code of Federal Regulations section 563.39 is not included in Part 545, it is referenced by one regulation which is included in Part 545. The regulation, section 545.122, provides: "A Federal savings association, upon specific approval of its board of directors, may enter into employment contracts with its officers and other employees in accordance with § 563.39 of this chapter." (12 C.F.R. § 545.122 (1990).)

■ The applicable statutory and regulatory law, read in harmony with each other and with interpretive case law, demonstrate that Congress intended that the OTS should be allowed to operate federal savings associations without the necessity of complying with state regulations governing state institutions. (See, e.g., *Conference of Fed. Sav. & Loan Assn.* v. *Stein* (9th Cir. 1979) 604 F.2d 1256, 1257-1258, affd. by order (1980) 445 U.S. 921 [63 L.Ed.2d 754, 100 S.Ct. 1304], in which it was held that the State of California does not have the power to regulate federal savings associations under its Housing Financial Discrimination Act, and *Glendale Fed. Sav. & Loan Ass'n* v. *Fox* (C.D.Cal. 1978) 459 F.Supp. 903, 904, in which it was held that "due-on-sale" clauses contained in loan instruments of federal savings associations are governed by federal law.) This statutory and regulatory law does not, however, demonstrate a legislative intent that jurisdiction over all disputes involving a federal savings association be vested exclusively in federal courts.

As a general principle, concurrent state courts' jurisdiction is presumed unless federal statutory or regulatory law expressly vests jurisdiction exclusively in the federal courts. (*Shea* v. *First Federal Sav. and Loan Ass'n* (1981) 184 Conn. 285 [439 A.2d 997, 1001].) Further, many courts have concluded that concurrent jurisdiction exists over certain issues arising from the operation of federal savings associations because Congress has not occupied the entire regulatory field. For example, in *Morse* v. *Mutual Federal Sav. & Loan Assn.* (D.C.Mass. 1982) 536 F.Supp. 1271, 1280, a Massachusetts court concluded that a state law prohibiting unfair and deceptive trade practices was not preempted by HOLA or by regulations promulgated pursuant to 12 United States Code section 1464. Similarly, it has been held that HOLA did not preempt local consumer protection law concerning maximum interest

rates on retail installment contracts. (*DACO* v. *Oriental Federal Sav.* (D.P.R. 1986) 648 F.Supp. 1194, 1197.)

Our research has revealed few cases from other jurisdictions which involve the same regulation as the one before us, i.e., 12 Code of Federal Regulations section 563.39 as incorporated into part 545. Those few cases discussing section 563.39 reached varying results. For example, in *Cole* v. *Carteret Sav. Bank* (1988) 224 N.J.Super. 446 [540 A.2d 923], a New Jersey court treated the preemption issue as a choice of law issue rather than a choice of forum issue without discussion of whether the regulation affected subject matter jurisdiction. In *Piekarski* v. *Home Owners Sav. Bank, F.S.B.* (D.Minn. 1990) 752 F.Supp. 1451, liability was determined in the state court, and the action was then removed to the federal court for determination of damages. In *Berry* v. *American Federal Sav.* (Colo.Ct.App. 1986) 730 P.2d 905, a Colorado court treated the preemption issue as a choice of law question, but applying federal law, dismissed the action.

We find in the regulations before us no express congressional intent to reserve jurisdiction exclusively in the federal courts. Therefore, we conclude that the statement of preemption found in 12 Code of Federal Regulations, section 545.2 does not affect jurisdiction, and that state courts have concurrent jurisdiction over claims arising under the regulation.[6]

Where, as here, concurrent jurisdiction exists, federal preemption presents a choice of law issue (*Hughes* v. *Blue Cross of Northern California* (1989) 215 Cal.App.3d 832 [263 Cal.Rptr. 850]) if there is a conflict between state and federal law. (See *Screen Extras Guild, Inc.* v. *Superior Court, supra,* 51 Cal.3d 1017, 1023, 1024.) Therefore, the next step in our analysis is to determine whether California employment law interferes or conflicts with any legitimate federal interest in the regulation of employment agreements entered into by federal savings associations.

■ "In California, the employment relationship is presumptively 'at-will.' [Citation.] Our state provides a remedy for discharge from employment only if the termination contravened a valid express or implied agreement for job security [citation], stemmed from a pernicious form of discrimination [citation], or violated some other clear and fundamental public policy

---

[6]Even if we were to conclude that the preemption is jurisdictional, this would not be the end of our inquiry. We would then proceed to the issue of whether "the magnitude of especially deep-rooted local interests underlying particular state causes of action may outweigh any resulting interference with federal jurisdiction. [Citation.]" (*Screen Extras Guild, Inc.* v. *Superior Court* (1990) 51 Cal.3d 1017, 1023 [275 Cal.Rptr. 395, 800 P.2d 873].) In light of our conclusion that the preemption in this case does not affect jurisdiction, we need not reach this issue.

[citations]." (Italics deleted.) (*Screen Extras Guild, Inc.* v. *Superior Court, supra,* 51 Cal.3d at p. 1037 (dis. opn. of Eagleson, J.).)

Respondent contends this state law conflicts with the provisions of 12 Code of Federal Regulations, section 563.39 because there is *no* remedy for discharge pursuant to that section. In support of this contention respondent argues that any contract which it has with an employee "must provide for: (a) termination at-will; and (b) termination other than for cause." (Italics deleted.) Respondent reasons that "[i]t necessarily follows that non-contract employees, . . . are also terminable at-will and other than for cause."

We disagree. ▆▆▆▬▆▆ ▆ Contrary to respondent's contention, the regulation specifically and unambiguously protects an "employee's right to compensation or other benefits under the contract" in the event the employee is fired without cause.[7] Thus, the regulation provides protection to employees which is similar to that provided under state law where there exists a valid agreement for job security.

The regulation does not address the remedies available to an employee who is terminated, as appellant alleges she was, in violation of public policy. The significance of such an allegation is that under state law a prevailing plaintiff may recover tort damages. (See *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 177-178 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314].) Since the regulation speaks only to the recovery of contract benefits, the damages recoverable presents an area of potential conflict between federal and state law.

Respondent takes the position that *Bollow* v. *Federal Reserve Bank of San Francisco* (9th Cir. 1981) 650 F.2d 1093, and *Inglis* v. *Feinerman* (9th Cir. 1983) 701 F.2d 97, are persuasive authority in support of the conclusion that the potential for tort damages presents a conflict which is prohibited by the regulation. In both cases a bank employee sued for wrongful termination of employment, and in both cases the Ninth Circuit held that federal law preempted California's law of wrongful termination.

---

[7]Respondent informs us that appellant, like the majority of its employees, had no written employment contract. Respondent apparently seeks to avoid the rule that a demurrer tests only the sufficiency of the allegations of the complaint. A court will not consider facts which have not been alleged in the complaint unless they may be reasonably inferred from the matters which have been pled or are proper subjects of judicial notice. (See *Moncur* v. *City of Los Angeles* (1977) 68 Cal.App.3d 118, 126 [137 Cal.Rptr. 239].) We note that appellant's complaint did not allege any particular contract, either written or oral. She merely alleged employment and termination in violation of public policy. We note that although 12 Code of Federal Regulations, section 563.39 requires employment contracts to be written, respondent nonetheless concedes that appellant "indisputably falls within" the provision of 12 Code of Federal Regulations, section 563.39.

Both cases, however, share a major distinction from the one before us in that conflicting federal law applicable to those cases allowed dismissal of an employee "at pleasure." In *Bollow*, the governing statute stated: "[A] Federal reserve bank . . . shall have power—[¶] . . . To appoint by its board of directors . . . employees . . . , to define their duties, . . . *and to dismiss at pleasure* such officers and employees. 12 U.S.C. § 341, Fifth (emphasis added)." (*Bollow* v. *Federal Reserve Bank of San Francisco, supra,* 650 F.2d at p. 1097.) In *Inglis*, the issue was the effect of 12 United States Code section 1432(a) which provided that "the bank shall have the power to— select, employ and fix the compensation of such officers, employees, attorneys, and agents,—and to *dismiss at pleasure* such officers, employees and agents; (Emphasis added.)" (*Inglis* v. *Feinerman, supra,* 701 F.2d at p. 98.)

Further, neither *Bollow* nor *Inglis* involved an alleged violation of public policy. In *Bollow*, the plaintiff asserted merely that "under California law he was considered an 'at-will' employee entitled to a hearing before being terminated." (650 F.2d at p. 1097, fn. omitted.) The plaintiff in *Inglis* claimed the real reason for his termination was his insistence that the bank conform certain of its unspecified practices to federal law. The reviewing court rejected this argument noting, simply, that "[12 U.S.C.] § 1432(a) permits no inroads into the 'dismiss at pleasure' language." (701 F.2d at p. 99.)

In this case, contrary to *Bollow* and *Inglis*, neither the congressional grant of authority to the board (12 U.S.C. § 1464) nor the regulation promulgated pursuant to such authority (12 C.F.R. § 563.39) contains "dismiss at pleasure" language. Further, as we have previously noted, the regulation contains language which is "clearly protective of employees who are fired without cause." (*Cole* v. *Carteret Sav. Bank, supra,* 540 A.2d at p. 925.) Therefore, we find neither *Bollow* nor *Inglis* to be persuasive authority in this case.

Respondent also relies on *Aalgaard* v. *Merchants Nat. Bank, Inc.* (1990) 224 Cal.App.3d 674 [274 Cal.Rptr. 81], in which the plaintiff alleged his employment with a bank was terminated in violation of a state statute prohibiting age discrimination. The trial court granted defense motions for summary judgment on the ground that the federal statute allowed termination at pleasure. The reviewing court affirmed, explaining: "The controlling federal statute, section 24 (Fifth), empowers the board of directors of a national bank to 'dismiss [designated] officers or any of them at pleasure . . . .' " (224 Cal.App.3d at p. 688, fn. omitted.) Thus, *Aalgaard*, like *Inglis* and *Bollow*, is not on point.[8]

---

[8]Respondent cites several other cases from other jurisdictions in which the reviewing court was concerned with "at pleasure" language. We need not and do not discuss each separately.

We find *Cole* v. *Carteret Sav. Bank, supra,* 540 A.2d 923, to be more persuasive authority. In that case a savings and loan employee alleged that he was wrongfully terminated in violation of an implied contract doctrine based on an employee manual. The reviewing court rejected the defense contention that this claim was preempted by the very statutory and regulatory provisions with which we are concerned in the case before us. The court noted the difference between the federal law which was the subject of *Inglis* v. *Feinerman, supra,* 701 F.2d 97, in which the institution was subject to the Home Loan Bank Act rather than HOLA, which controls in the case before us. The *Cole* court explained: "The Home Loan Bank Act, unlike HOLA, and the regulation herein, has a section that specifically permits home loan banks to terminate employees at will. *See* § 1432(a). Clearly in that context a conflict exists between Congress's authorization in the act and the state law relied upon by the claimant. Thus, applying principles [of preemption] . . . where such a conflict exists, the federal law preempts. However, HOLA not only is devoid of any authorization to fire at will, but the very regulation in question, 12 C.F.R. § 563.39, indicates a clear concern for employee rights. Thus one can see an expression of policy by Congress with regard to home loan banks of affording no protection to employees, while the bank board by regulation apparently determined to afford protection to employees of federal savings and loans fired without cause. . . . [¶] It seems unlikely that the presence of said regulation amounts to an intent by the board to preempt federal savings and loans from the thrust of state law that affords protection to the employees of such institutions. An analysis of HOLA and the board's regulations implementing it fails to reveal any intent to bar state established protection for such employees." (*Cole* v. *Carteret Sav. Bank, supra,* 540 A.2d at pp. 925-926.)

We believe this rationale applies with even greater strength where, as in this case, a termination in violation of public policy has been alleged. Appellant's complaint alleges, in essence, a retaliatory firing resulting from her refusal to withdraw her valid claim for partial unemployment benefits.[9]

---

[9]The factual allegations of appellant's complaint are as follows: Appellant commenced employment with respondent in December of 1979, rising to the level of assistant manager. When she returned from a maternity leave in 1987, she was employed as a supervisor with the promise that when an assistant manager position opened, she would be reinstated in that position. In March of 1988, when appellant was "having problems being available [for] full-time employment" due to family problems, respondent requested her to accept a part-time position until the problems were resolved. Sometime after April of 1988, appellant requested to be returned to full-time status, but respondent refused. During this time appellant learned that she was eligible for partial unemployment insurance benefits of $16 per week. She applied for these benefits stating on her application, at the direction of an Employment Development Office representative, that her " '[a]sthmatic child prohibit[ed] full-time work.' " Respondent told her she must withdraw her claim or be fired. When she continued to

We perceive no conflict between state law which, as a matter of public policy, protects individuals from such retaliation (see, e.g., *Gantt* v. *Sentry Insurance* (1990) 227 Cal.App.3d 939, 965 [265 Cal.Rptr. 814]; *Jenkins* v. *Family Health Program* (1989) 214 Cal.App.3d 440, 448 [262 Cal.Rptr. 798]; see also *Sanchez* v. *Unemployment Ins. Appeals Bd.* (1977) 20 Cal.3d 55, 70 [141 Cal.Rptr. 146, 569 P.2d 740]) by allowing tort remedies, and the federal regulation which allows for the recovery of contract benefits for the lesser wrong of terminating employment without cause. Therefore, we conclude that Code of Federal Regulations section 563.39 does not preempt state law in this case and that the trial court erred in concluding it did.

For the foregoing reasons, the order of the trial court sustaining respondent's demurrer without leave to amend is reversed, and the matter is remanded to the trial court for further proceedings. Appellant to recover her costs on appeal.

George, J., and Goertzen, J., concurred.

---

pursue her claim, she was fired on July 22, 1988. Thereafter, respondents actively opposed her claim. Appellant prevailed at both the administrative hearing and on appeal from said decision.

Respondent informs this court that appellant's employment was terminated for providing false information in an attempt to obtain unemployment insurance benefits. Respondent has also requested this court to take judicial notice of a portion of appellant's testimony given in the administrative hearing. We decline to consider either the conflicting statement of fact or the administrative hearing testimony because we are reviewing the trial court's ruling on demurrer.