Filed 4/8/26  BV Industries v. City of Los Angeles CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| BV INDUSTRIES, LLC, et al., | B340042 |
| Plaintiffs and Appellants, | Los Angeles County |
| v. | Super. Ct. No. 22STCV17296 |
| CITY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge. Affirmed in part and reversed in part.

Law Office of Randall Rich, Randall B. Rich; Marcus, Watanabe & Enowitz and Daniel J. Enowitz for Plaintiffs and Appellants.

Joseph C. Graven; Burke, Williams & Sorensen, Charles H. Abbott, Alena Shamos and Alan A. Sozio for Defendants and Respondents.

_____

Plaintiffs BV Industries, LLC (BVI) and Royal 420 (Royal) are, respectively, the owner and lessee of commercial warehouse properties (collectively, the Property) in downtown Los Angeles. The Property sits within the service area of defendant Los Angeles Department of Water and Power (DWP), a department of defendant City of Los Angeles. Individual defendants Jeffrey Bergman, Ronald Schram, and Victor Pukhalsky are city employees. Plaintiffs sued when electric service to the Property was interrupted and not restored. After three amended complaints, on defendants' demurrer, the trial court ordered plaintiffs' action dismissed in its entirety and entered judgment accordingly.

We agree with plaintiffs that they adequately alleged a cause of action against DWP for nuisance. Plaintiffs otherwise fail to show reversible error. We therefore reverse the judgment of dismissal only as to their sixth cause of action as against DWP and affirm in all other respects.

## BACKGROUND

### I.    Factual Background

We draw the factual background from the allegations of plaintiffs' third amended complaint (TAC). We also note facts, but do not rely on them in our analysis, that defendants improperly assert in their briefing.

The Property comprises adjoining parcels commonly known as 806 and 810-816 East 61st Street in Los Angeles. BVI has owned the Property since 2015. DWP is the exclusive provider of electric service in the area where the Property is located.

Royal is engaged in the cannabis business. Though plaintiffs allege Royal was BVI's tenant at the Property "[a]t all times relevant" to the TAC, they also allege Royal's lease was set

2

to commence only in 2019 after Royal received its "licenses to grow, manufacture and distribute cannabis."

In 2017, BVI had another tenant at the Property "who was in a 5 year lease paying $37,500.00/month . . . ." That tenant is not named and is not a party to the action.

In May 2017, there was a power outage at the Property. Defendants begin their respondents' brief by asserting this was plaintiffs' fault: "By using heat lamps to cultivate cannabis, [plaintiffs] overloaded a transformer that powers several businesses, including [the Property]," causing the transformer to "bl[o]w." These facts are not alleged in the TAC, nor are they the subject of any request for judicial notice.

A week after the power outage, DWP "came to the Property, replaced their transformer[,] and, without warning, advance notice, or any legitimate reason, cut the power wires that connect all power and electricity to the Property." Neighboring properties serviced by the transformer, however, did have their electric service restored at that time.

In July 2017, DWP advised BVI it would "no longer service the electrical panels that the Property had, which were 400 Amp, 1 phase, and 1200 Amp, 3 phase; and that []DWP no longer services 3 wire systems and now require[s] a 4-wire system." For its electric service to be restored, BVI would need to "demolish its entire existing electrical panels and related equipment in the Property." DWP further advised that, going forward, BVI's service would be limited to 800 amps unless it "install[ed], at its own expense a transformer on the Property. This would involve installing an entirely new system, estimated at $400,000.00, and would take a year or more to build." These demands came as a surprise to BVI because "the electricity for the [Property] had been fully functional prior to the time the wires were cut, and all

3

electricity bills were paid and current. The Property [had] large high voltage electrical panels, which were built to code, inspected and approved by both []DWP and . . . Los Angeles Department of Building and Safety[] who both signed the plans, permits and inspections."

Plaintiffs allege DWP's demands were baseless pretext to cause BVI's then-existing tenant to terminate its lease and thereby force BVI to sell the Property. According to plaintiffs, "[]DWP and [its] investors coveted the Property" due to the Property's valuable cannabis entitlements. Without power, BVI would be forced to sell, "DWP investors" would then buy it for "cents on the dollar," DWP "would then come and re-connect the power lines and restore service and the new owner backed by []DWP would then enjoy the illegal enrichment of the instant power increase with all the Cannabis entitlements that are attached to the Property."

BVI and DWP went back and forth over getting the power restored to the Property. In summary, "over the span of 7 years to [the] date [of the TAC], virtually every several weeks or every month, []DWP would present a new task or condition that [BVI] needed to satisfy in order to be promised the return of power to the Property. However, each time [BVI] met those conditions []DWP would impose yet another new condition not previously disclosed or mentioned. This went on for 5 years and continues to [the date of the TAC]."

Plaintiffs allege DWP "has never provided any official written explanation as to why it disconnected power from the Property—and ha[s] not restored the power even as of the date of [the TAC]."

Though there are allegations concerning the individual defendants' conduct during the period in which plaintiffs sought

4

to have their electric service restored, plaintiffs do not argue in their opening brief that any of the individual defendants were individually liable for the conduct they say gives rise to liability— DWP cutting the power lines to the Property and refusing to restore its electric service.

## II.     Procedural Background

BVI sued DWP and 100 Doe defendants in May 2022. DWP filed an answer to BVI's initial complaint in July 2022. In May 2023, BVI amended its initial complaint to identify the individual defendants as three of their Doe defendants.

Royal separately sued the City of Los Angeles in 2023. The trial court ordered that action consolidated with BVI's and directed the filing of a joint complaint. Plaintiffs filed their first amended complaint against all five defendants in September 2023.

After a pre-demurrer meet and confer, the parties stipulated to defendants filing a second amended complaint (the SAC). The SAC, filed in November 2023, contained four causes of action: (1) inverse condemnation; (2) violations of section 1983 of title 42 of the United States Code (section 1983); (3) violations of section 1961 of title 18 of the United States Code (section 1961); and (4) "violations of the California Government Code."

Defendants filed a demurrer to the SAC. The trial court sustained it without leave to amend as to plaintiffs' causes of action under sections 1983 and 1961. It sustained the demurrer with leave to amend as to the causes of action for inverse condemnation and "violations of the California Government Code."

Plaintiffs then filed the TAC. Despite having leave to amend only two causes of action from the SAC, the TAC contained seven causes of action: (1) inverse condemnation;

(2) "violation of substantive due process under the fourteenth amendment to the United States Constitution"; (3) "violation of procedural due process under the 5th and 14th amendments to the United States Constitution"; (4) Public Utilities Code section 2106; (5) "violations of the California Government Code"; (6) private nuisance under Civil Code section 3479; and (7) negligence.

Defendants demurred to the TAC. In support of their demurrer, they requested judicial notice of DWP's "Rules Governing Water and Electric Service" dated October 2008. It does not appear the trial court acted on that request. The court sustained defendants' demurrer as to each cause of action in the TAC, without leave to amend, but allowed plaintiffs to amend "to add new more concrete definitive cause[s] of action (if one is found to exist)."

Plaintiffs declined to amend and the trial court entered a judgment of dismissal. Plaintiffs appealed.

## DISCUSSION

### I. Demurrer Standard and Standard of Review

" ' " 'A demurrer tests the legal sufficiency of the complaint . . . .' [Citations.] On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law." ' " (*Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472, 480 (*Chiatello*).)

In performing this review, " ' " '[w]e treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.'

[Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" ' [Citation.] We likewise accept facts that are reasonably implied or may be inferred from the complaint's express allegations." (*Chiatello*, *supra*, 189 Cal.App.4th at p. 480.)

Even though our review is de novo, we do not independently search for error. "[I]t is [the plaintiffs'] burden to affirmatively demonstrate that the demurrer was erroneously sustained as a matter of law, which means that plaintiffs must show that they pleaded facts sufficient to establish each element of each cause of action." (*Amiodarone Cases* (2022) 84 Cal.App.5th 1091, 1100–1101.) It is not enough for a plaintiff to show the trial court sustained a demurrer for an incorrect reason. (*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 631.) As always, an appellant's burden to show error may be satisfied only through "reasoned argument and citation to authority." (*Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066.)

Because plaintiffs appealed notwithstanding the trial court's grant of leave to amend, we need not consider the possibility of further amendment. (*Shaw v. Los Angeles Unified School Dist.* (2023) 95 Cal.App.5th 740, 753 ["the failure to amend a complaint constitutes an admission that the plaintiffs have stated the case as strongly as they could have, and no additional facts could be alleged to cure the defect"].)

## II.   Analysis

We now address whether plaintiffs have affirmatively shown they adequately alleged each element of each of the seven causes of action asserted in the TAC. We conclude they have

7

shown only that they stated a cause of action for private nuisance. We address that one first, and then turn to those as to which no error is shown.

### A. Nuisance

Plaintiffs' sixth cause of action is for nuisance under Civil Code section 3479. That section, in relevant part, provides: "Anything which is injurious to health . . . or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . is a nuisance." (*Ibid.*) A private nuisance is a nuisance which does not "affect[] at the same time an entire community or neighborhood, or any considerable number of persons . . . ." (§§ 3480, 3481.)

Government Code section 815 does not shield public entities from liability for Civil Code section 3479 nuisance causes of action. (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 937.) Plaintiffs only argue they stated a cause of action against DWP, not the individual defendants; we limit our consideration to whether they stated the cause of action accordingly.

"The statutory definition of nuisance appears to be broad enough to encompass almost any conceivable type of interference with the enjoyment or use of land or property." (*Stoiber v. Honeychuck* (1980) 101 Cal.App.3d 903, 919 (*Stoiber*).) Case law limits a private nuisance to situations in which a plaintiff can show: (1) it owned, leased, occupied or controlled real property; (2) the defendant, by acting or failing to act, created a condition or permitted a condition to exist that was harmful to health or was an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property; (3) the defendant's conduct in acting or failing to act was intentional and unreasonable or unintentional but negligent or reckless; (4) the

8

condition substantially interfered with the plaintiff's use or enjoyment of its land; (5) an ordinary person would reasonably be annoyed or disturbed by the defendant's conduct; (6) the plaintiff did not consent to the defendant's conduct; (7) the plaintiff suffered harm as a result of the defendant's conduct; (8) the defendant's conduct was a substantial factor in causing the plaintiff's harm; and (9) the seriousness of the harm caused by the defendant outweighs its social utility. (See *Department of Fish & Game v. Superior Court* (2011) 197 Cal.App.4th 1323, 1352.) "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." (Civ. Code, § 3482.)

DWP relies primarily on this last point, as did the trial court. It argues plaintiffs' claims fail "because []DWP's actions were in accordance with its policy." While this may eventually prove to be true, no such allegations exist in the TAC. Instead, Plaintiffs allege DWP cut their power for "[no] legitimate reason." DWP argues contrary facts in its respondents' brief: that it cut plaintiffs' electricity because their "power needs exceeded [DWP's] transformer's capacity"; plaintiffs' use was "unsafe or damaging to [DWP] or its customers"; and plaintiffs failed to "notify []DWP of the 'major change in the usage of electricity or in operations that affects [DWP's] service' right away as required by [DWP policy]." None of this is alleged in the TAC.

DWP argues its October 2008 *rules* were properly before the trial court on DWP's request for judicial notice. True, but the plaintiffs' noncompliance, and DWP's compliance with, those rules was not. Rather, it appears the sole source of these facts was DWP's brief in support of its demurrer. It was improper for the trial court to rely on such facts. (*Hall v. Great Western Bank* (1991) 231 Cal.App.3d 713, 719, fn. 7 (*Hall*).)

9

The TAC, without reference to facts DWP adds, does state a cause of action for private nuisance against DWP for cutting off power to the Property under the circumstances alleged. (1) Plaintiffs own or lease the Property. (2) DWP acted to deprive them of electric service there. (3) DWP's action was intentional and unreasonable. (4) Not having electric service substantially interfered with plaintiffs' use of the Property. (5) The prolonged denial of service is of a character that would reasonably annoy or disturb an ordinary person. (6) Plaintiffs opposed DWP's conduct. (7) Plaintiffs suffered harm as a result of DWP's conduct. (8) DWP's conduct was a substantial factor in causing plaintiffs' harm. (9) The harm DWP caused plaintiffs outweighs the social utility of denying them power for "[no] legitimate reason."

The trial court erred in dismissing this cause of action. In recognizing plaintiffs' cause of action, we do not pass on any possible defenses DWP may have. (*Stoiber*, *supra*, 101 Cal.App.3d at p. 920.) Moreover, to the extent plaintiffs' allegations turn out not to have a factual basis, there are proper procedures for addressing this, including summary judgment pursuant to Code of Civil Procedure section 437c, or, if otherwise warranted, sanctions pursuant to section 128.7. Demurrer, however, is not the appropriate procedure to challenge plaintiffs' allegations.

### B. We Affirm the Judgment of Dismissal as to All Other Causes of Action
#### 1. Inverse Condemnation

Plaintiffs' discussion in their opening brief of their cause of action for inverse condemnation is inadequate to show error. Rather than discussing what this cause of action is, plaintiffs jump directly to argument. They begin by quoting an allegation of their complaint that defendants "completely deprived plaintiffs of

10

their use of the Property," and then, without any context for the significance of the determination, assert that "in sustaining [defendants'] demurrer, the Trial Court ruled [plaintiffs] failed to allege a public 'benefit,' 'improvement,' or 'use.' " They then proceed to argue that "the provision of power and electricity by a municipality or public utility is a quintessential public 'benefit,' improvement,' or 'use.' " As such, they conclude "the purveyance of electricity to the Property by DWP is clearly a public 'benefit,' 'improvement,' or 'use' " such that the trial court should have addressed "whether [they] validly alleged facts which, if proven at Trial, established that DWP had 'taken or damaged' the Property within the meaning inverse condemnation law." Still, plaintiffs do not articulate what allegations an inverse condemnation plaintiff must make in order to state the cause of action. In block-quoted authority, they assert that " '[a]n action for inverse condemnation has its basis in the California Constitution, article I, section 19, which requires payment of just compensation when private property is taken or damaged for public use . . . .' " (Quoting *Oliver v. AT&T Wireless Services* (1999) 76 Cal.App.4th 521, 529, italics omitted.) And in other block-quoted authority, they contend a property was "taken for a public use" when electrical transmission lines serving more than 1,000 households failed and caused a fire that burned the plaintiff's property. (Quoting *Barham v. Southern Cal. Edison Co.* (1999) 74 Cal.App.4th 744, 754.) But nowhere do they grapple with the meaning of "public use."

Defendants explain, with citation to *Gutierrez v. County of San Bernardino* (2011) 198 Cal.App.4th 831, 837, that a cause of action for inverse condemnation lies where the plaintiff suffers injury to real property proximately caused by a public improvement. They continue, with citation to *Mercury Casualty*

11

*Co v. City of Pasadena* (2017) 14 Cal.App.5th 917, 928, that
" '[a] public improvement is a project or use that involves
'(1) deliberate action by the state (2) taken in furtherance of
public purposes.' "

We find no allegations in the TAC that defendants'
purportedly harmful conduct was taken in furtherance of public
purposes. Plaintiffs allege harm from DWP cutting the power
lines to the Property and refusing to restore electric service. They
do not allege this furthered a public purpose. To the contrary,
they allege DWP acted "without any legitimate reason." The only
reasons they proffer for DWP's actions are that it wanted to
devalue the Property so DWP's "investors" could buy them "for
cents on the dollar," allowing the "new owner backed by []DWP"
to reap the benefits when DWP later reconnected service. These
allegations in no way suggest cutting the lines to the Property
furthered provision of electricity to the public or otherwise served
any public interest.[1]

As plaintiffs fail to show the trial court erred in sustaining
defendants' demurrer as to this cause of action, we affirm its
dismissal.

### 2. Substantive Due Process

Plaintiffs' discussion of their substantive due process cause
of action is similarly deficient. They do not describe the legal
showing necessary to state a cause of action for violation of
substantive due process nor identify their allegations which make

---

[1] The allegations are also difficult to reconcile with plaintiffs'
allegations that DWP is a municipal agency (as opposed to an
investor-owned utility).

12

that showing. Instead, they again dive into argument about purported flaws in the trial court's analysis.

Without any context for the legal significance of the determination, plaintiffs complain the trial court found defendants' act of cutting plaintiffs' power did not " ' "shock the conscience" ' " because it did so " 'for safety reasons,' " even though no such reasons are alleged in the TAC. Plaintiffs are correct that relying on factual assertions found only in the defendants' pleadings and not subject to judicial notice by the court on demurrer is improper. (See *Hall*, *supra,* 231 Cal.App.3d at p. 719, fn. 7.) But as we are concerned with the court's decision, not its reasoning, plaintiffs are incorrect that the court's adoption of facts extrinsic to the TAC amounts to "blatant 'reversible error.' "

Plaintiffs then address "[t]he other basis upon which the Trial Court sustained [defendants'] demurrer" to this cause of action: that plaintiffs failed to " 'identify a liberty or protected interest by the Constitution [*sic*] or the 5th Amendment Taking[s] Clause.' " Through more heavy reliance on block quotes, plaintiffs then urge that "the right to utility service is a constitutionally protected right." Plaintiffs rely on three cases for this proposition: *Memphis Light, Gas & Water Division v. Craft* (1978) 436 U.S. 1 (*Memphis Light*); *Logan v. Zimmerman Brush Co.* (1982) 455 U.S. 422 (*Logan*); and *Benn v. County of Los Angeles* (2007) 150 Cal.App.4th 478 (*Benn*).

*Memphis Light* concerned utility customers' *procedural* due process rights. Though plaintiffs assert that by depriving customers of utility service, "the Supreme Court held [the defendant] violated [their] 'substantive due process rights.' " Their quoted language appears nowhere in the opinion. The Supreme Court instead concluded the utility was obligated to

13

afford customers notice and an opportunity to be heard before terminating service for nonpayment. (*Memphis Light*, *supra*, 436 U.S. at pp. 16–19.) *Logan* also concerned procedural due process rights, in that case relating to the prosecution of an employment discrimination claim. (*Logan*, *supra*, 455 U.S. at pp. 432–435.) *Benn* did address a claimed substantive due process violation, but not one that is legally or factually similar to the one asserted here. The *Benn* plaintiff, a foster care provider, brought a cause of action under section 1983[2] predicated on purported violations of its procedural and substantive due process rights. (*Benn*, *supra*, 150 Cal.App.4th at p. 489.) The basis for the purported violations was that the County of Los Angeles had placed the provider on a "Do Not Refer" list, effectively depriving it of expected future revenue under its contract with the county. (*Ibid.*) The *Benn* court found no violations. (*Id.* at pp. 494, 501.)

After referring to these authorities, plaintiffs conclude "in having their electricity and power for the Property taken away, [they] have alleged deprivation of a property right protected by the United States Constitution to support their substantive due process claim."

We are not satisfied that plaintiffs met their burden to affirmatively show the TAC states a cause of action for violation

---

[2]    Plaintiffs have expressly abandoned any cause of action under section 1983. They do not explain how they can assert a cause of action under the due process clause of the United States Constitution without one. (See *Azul-Pacifico, Inc. v. Los Angeles* (9th Cir. 1992) 973 F.2d 704, 705 (*Azul-Pacifico*) ["Plaintiff has no cause of action directly under the United States Constitution. . . . [A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983."].)

of their substantive due process rights. Put simply, it is impossible for us to glean from their briefing a workable articulation of the asserted cause of action for us to apply to the allegations of the TAC. The law of substantive due process is nuanced and complex. (See, e.g., *Littlejohn v. School Board of Leon County* (11th Cir. 2025) 132 F.4th 1232, 1280–1287 (conc. opn. of Newsom, J.); see also Chemerinsky, *Substantive Due Process* (1999) 15 Touro L.Rev. 1501, 1501 ["There is no concept in American law that is more elusive or more controversial than substantive due process."].) Plaintiffs' attacks on the trial court's analysis and quotations from off-point authorities do not give us a basis to conclude their particular allegations are actionable. It is not our role to do the additional research and analysis necessary to draw any conclusion in this regard. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545–546.)

### 3. Procedural Due Process

Plaintiffs also fail to affirmatively show they pleaded a cause of action for violation of their right to procedural due process.[3] Again, they simply attack the trial court's reasoning that they " 'fail[ed] to allege a protected interest that was violated.' " Missing is any discussion of what other showings are necessary to state a cause of action for violation of procedural due process, should one exist (see *Azul-Pacifico*, *supra*, 973 F.2d at p. 705), or how their allegations and the matters subject to

---

[3] Even if they had properly articulated it, we question the viability of this cause of action, too, given that plaintiffs abandoned their cause of action under section 1983. (See *Azul-Pacifico*, *supra*, 973 F.2d at p. 705.)

15

judicial notice (e.g., DWP's Rules, including procedures for resolution of disputes) show a violation.

### 4.    Public Utilities Code Section 2106

Plaintiffs' cause of action under Public Utilities Code section 2106, incorporating by reference section 451, fails because neither section applies to DWP.

Public Utilities Code section 2106 subjects "public utilit[ies]" to liability for persons or corporations harmed by certain unlawful acts or omissions. Section 451 imposes certain obligations and restrictions on "public utilit[ies]."

Though plaintiffs contend "[t]here is no dispute DWP is a 'public utility,' " the case they cite—*County of Inyo v. Public Utilities Commission* (1980) 26 Cal.3d 154 (*Inyo*)—compels the opposite conclusion.

What counts as a "public utility" for purposes of Public Utilities Code sections 2106 and 451 is specified in section 216. (See § 203 ["Unless the context requires, the definitions and general provisions set forth in [sections 201 through 248] govern construction of [the Public Utilities Act (§§ 201-2120)]."].) Section 216 defines "public utility," in relevant part, to include "every . . . electrical corporation . . . , where the service is performed for, or the commodity is delivered to, the public or any portion thereof." (§ 216, subd. (a)(1).) Only a "corporation," as defined in section 204, or a "person," as defined in section 205, may be an "electrical corporation." (See § 218.)

The *Inyo* court concluded DWP is not a "public utility" subject to Public Utilities Commission regulation because it is not a "water corporation" as defined in Public Utilities Code section 241. (*Inyo, supra,* 26 Cal.3d at p. 165.) It so held because DWP is neither a "corporation" (§ 204) nor a "person" (§ 205).

16

(*Inyo*, at p. 165.) The same reasoning means DWP is not an "electrical corporation" giving rise to "public utility" status under section 216. (See § 218.)

The *Inyo* court bolstered its conclusion by noting Public Utilities Code section 216's general definition of "public utility" does refer (once) to "municipalit[ies]," but that reference excludes, rather than includes, them: "Subdivision (c) states that 'When a person or corporation performs any service or delivers any commodity to any person, private corporation, municipality or other political subdivision of the state, which in turn . . . performs such service or delivers such commodity to or for the public . . . such person or corporation is a public utility subject to the jurisdiction, control, and regulation of the commission . . . .' [In subdivision (c),] the municipality appears as a middleman in the distribution of utility services; yet it is only the originating 'person or corporation,' not the municipality, which is a public utility subject to regulation." (*Inyo*, *supra*, 26 Cal.3d at p. 166.)

### 5.     Government Code Cause of Action

Plaintiffs assert the TAC states a cause of action under Government Code sections 815.6, 815.2, 820, and 820.8. Their cause of action referring to these provisions is styled "violations of the California Government Code."

### i.     Government Code Section 815.6

Government Code section 815.6 provides that "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (*Ibid.*) This provision

17

creates a "private cause of action . . . against a public entity . . . if the underlying enactment sets forth the elements of liability set out in section 815.6." (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897.)

Here, plaintiffs assert the mandatory duty arises from section 451 of the Public Utilities Code. As we have already discussed, section 451 imposes no duties on DWP. Plaintiffs therefore fail to assert any basis for liability against DWP pursuant to Government Code section 815.6.

### ii. Government Code Sections 815.2, 820, and 820.8

As relevant here, Government Code section 815.2 makes a public entity liable for an injury caused by its employee by an act or omission "within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against th[e] employee . . . ." (*Id.*, subd. (a).) Section 820 makes a public employee "liable for injury caused by his act or omission to the same extent as a private person." (§ 820, subd. (a).) And section 820.8 provides, "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person. Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission."

We begin by noting plaintiffs' entire discussion of these purported causes of action focuses on liability of DWP, not the individual defendants.[4] Since plaintiffs do not mention the

---

[4]     In footnote 1 of their opening brief, plaintiffs say they refer to all defendants "collectively" as DWP "[f]or ease of reference."

individual defendants, and conclude only that "pursuant to [Government Code sections] 815.2, 820, and 820.8, [plaintiffs] have stated a valid cause of action against DWP . . . ." we similarly limit our analysis of the conduct of the individual defendants insofar as it gives rise to liability to DWP. And in considering this liability, we bear in mind the requirement that plaintiffs plead "every fact material to the existence of [governmental tort liability] with particularity." (*Lopez v. Southern California Rapid Transit District* (1985) 40 Cal.3d 780, 795.)

Plaintiffs argue the trial court erred in rejecting their Government Code cause of action for failure to allege " 'a negligent act on behalf of a government employee which would then provide for liability of the government entity.' " Plaintiffs correctly observe a public entity's liability under section 815.2 may be predicated on *any* act or omission that would otherwise subject that employee to liability. This includes torts for intentionally wrongful acts. (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 209.) They then point to allegations that DWP's unnamed "workers came to the Property and cut the power and electricity, without any legitimate reason, and rendered it useless."

Specifically, plaintiffs allege "[]DWP came to the Property, replaced their transformer and, without warning, advance notice, or any legitimate reasons, cut the power wires that connect all power and electricity to the Property." Even if we infer from this

---

Such a "collective[]" reference is unworkable to explain a cause of action as to which, as in the context of the Government Code's public entity and public employee liability provisions, the distinct roles of the various defendants is material.

allegation that a DWP employee cut the line, more is necessary to determine DWP would be liable to plaintiffs for its employee cutting the line. (See *Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077, 1113 ["[although] state public entities always act through individuals, that does not convert a claim for direct negligence into one based on vicarious liability"], overruled on another ground in *Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 639, fn. 1.)

To this end, plaintiffs argue only as follows: "if a private party cut the power lines to the Property without legitimate reason, and rendered it useless, whether intentionally or negligently, is there any doubt that party would be liable in tort to [plaintiffs] for the damages they sustained? [¶] Of course they would." Again, plaintiffs do not support their assertions with reasoned argument or citation to authority.

Perhaps more importantly, plaintiffs do not address the requirement under Government Code section 815.2 that a DWP employee acted within its authority in cutting power to plaintiffs' property. Not every on-the-job act of a public employee satisfies this requirement. For example, in *Thorn v. City of Glendale* (1994) 28 Cal.App.4th 1379, 1382, we held the city was not vicariously liable to a business owner when the city's fire marshal, on the premises to conduct a fire inspection, "committed arson by setting incendiary devices which destroyed the premises and the business conducted thereon." We reasoned a fire marshal intentionally burning down a building "is so startling and unusual an occurrence as to be outside those risks which should fairly be imposed upon the public employer." (*Id.* at p. 1383.) The same might be said of a lineworker intentionally destroying a power line, but we need not reach that conclusion to dispose of the matter. It was plaintiffs' burden on appeal to affirmatively

show they alleged each element necessary to support their cause of action. Whatever tort for which they hoped to hold DWP vicariously liable under section 815.2, they failed to address how one of its employees committed the tort "within the scope of his employment." (*Thorn,* at p. 1382.)

### 6. Negligence

Plaintiffs argue they adequately alleged negligence as follows: "DWP clearly owed [plaintiffs] a duty to exercise reasonable care in operating its power system to avoid unreasonable risks of harm to the Property. [¶] [Plaintiffs] have alleged [DWP] breached that duty by negligently cutting the power to the Property without any legitimate reason, thereby rendering it useless, and causing [plaintiffs] to sustain millions of dollars in damages."

Government Code section 815, subdivision (a), provides that "[a] public entity is not liable for an injury," "[e]xcept as otherwise provided by statute." (*Ibid.*) Civil Code section 1714, which codifies the common law principles of negligence on which plaintiffs rely, is not an exception to the general rule of public entity immunity. (*Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183.)

Plaintiffs try to get around Government Code section 815 by arguing "numerous cases hold that public utilities such as DWP can be held liable for common law negligence." Defendants conflate the concepts of public utility and public *entity*. Both cases plaintiffs cite—*Langley v. Pacific Gas & Electric Co.* (1953) 41 Cal.2d 655 and *Wilson v. Southern California Edison* (2015) 234 Cal.App.4th 123—involved *privately* owned public utilities. Such companies do not qualify for section 815's protections.

21

Plaintiffs also refer us back to their discussion of vicarious liability for acts of a public employee. But, for reasons already stated, plaintiffs did not meet their burden on appeal of showing they alleged every element necessary to hold DWP liable for a tort of an employee. And they do not assert in their discussion of their negligence cause of action that any individual employee committed a tort against them. Instead, they simply argue they alleged DWP was negligent.

**DISPOSITION**

The judgment is reversed as to plaintiffs' sixth cause of action for nuisance against DWP only. It is affirmed in all other respects. The parties are to bear their own costs.


RICHARDSON, J.

WE CONCUR:


CHAVEZ, Acting P. J.


GILBERT, J.*

---

*        Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.